1  Alan Himmelfarb (Cal. Bar. No. 90480)
   KAMBEREDELSON LLC
2  2757 Leonis Blvd.
   Los Angeles, CA 90058
3  (323) 585-8696
   ahimmelfarb@kamberedelson.com
4
5  Jay Edelson
   Ethan Preston
   KAMBEREDELSON LLC
6  53 West Jackson Ave., Suite 1530
   Chicago, IL 60604
7  312-589-6370
   jedelson@kamberedelson.com
8  epreston@kamberedelson.com

9  *Counsel for Plaintiffs*

10         **IN THE UNITED STATES DISTRICT COURT**
           **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
11

12  JASON DEMAS and JOHN RENNINGER,        No. 07cv2126-JM(NLS)
    on their own behalves and on behalf of all
13  others similarly situated,             **PLAINTIFFS' MEMORANDUM OF**
                                           **POINTS AND AUTHORITIES IN**
14                                         **SUPPORT OF THEIR MOTION FOR**
                   Plaintiffs,             **PRELIMINARY INJUNCTION AND**
15                                         **CLASS CERTIFICATION**
            v.
16                                         Date: January 11, 2008
    SONY ELECTRONICS, INC., a Delaware     Time: 1:30 p.m.
17  corporation,                           United States District Court
                                           Judge Jeffrey T. Miller
18                 Defendant.              940 Front Street
                                           Courtroom 6, 3rd Floor
19                                         San Diego, CA 92101

20

21

22

23

24

25

26

27

28

Plaintiffs' Memorandum of Points and Authorities        No. 07cv2126 -JM(NLS)
in support of their Motion for Preliminary
Injunction and Conditional Class Certification

# Table of Contents

Page

I.   **Factual Background** ................................................................................. 1

    A.    Progressive Scan Resolution Is a Material Fact For Television Purchasers ....... 1

    B.    SEI Misleadingly Marketed the XBR1 Televisions as Having 1080p Resolution, When in Fact the XBR1 Televisions Could Not Receive a 1080p Signal .......... 2

    C.    SEI's Misleading Marketing of the XBR1 Televisions Threatens Continued Consumer Confusion to This Day ..................................................................... 3

II.  **Given the Misleading Nature of SEI's Marketing, Plaintiffs Are Entitled to the Relief Sought in the Motion for Preliminary Injunction Under the UCL and CLRA** ................................................................................................................ 4

    A.    SEI's Misleading Marketing Gives Rise to UCL and CLRA Claims ................. 5

    B.    Imposition of a Constructive Trust and an Accounting are Ancillary Remedies to Claims for Restitution Under the UCL and CLRA .......................................... 6

    C.    UCL and CLRA Also Provide Plaintiffs with Right to Injunction Against Further False Advertising and a Corrective Advertising Remedy ...................... 7

III. **The Applicable Law Supports Plaintiffs' Motion for Preliminary Injunction** ........ 8

    A.    Plaintiffs Are Likely to Prevail on Their UCL and CLRA Claims ..................... 8

    B.    Irreparable Harm Is Presumed Where Plaintiffs Demonstrate Their Right to a Constructive Trust .............................................................................................. 9

    C.    Irreparable Harm Is Presumed Where SEI's Misrepresentations Create Consumer Confusion ......................................................................................... 10

    D.    The Balance of Hardships and Public Interest Favor Granting the Motion, Because Plaintiffs' Proposed Remedies are Carefully Tailored to Protect their Interests and the Class's Interests ...................................................................... 11

    E.    The Court Should Impose No Bond or a Minimal Bond ................................... 13

Plaintiffs' Memorandum of Points and Authorities   ii          No. 07cv2126 -JM(NLS)
in support of their Motion for Preliminary
Injunction and Conditional Class Certification

1

## Table of Contents

2
Page

3  III.   **Plaintiffs Seek Class Certification Under Rule 23(b)(2) and Rule 23(c)(4) to the**
       **Extent the Court Deems Class Certification Necessary to Obtain the Preliminary**
4      **Injunction** ........................................................................................................13

5
       A.   Members of the Class Are So Numerous That Joinder Is Impractical ...............15
6

7      B.   The General Application of the SEI Policies to Plaintiffs and the Other
            Members of the Classes Establish Commonality, Typicality, and Class
8           Cohesion.................................................................................................16

9      C.   Class Representatives And Their Counsel Are Adequate to Represent the
            Classes....................................................................................................18
10

11 IV.   **Conclusion** ..........................................................................................................19

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Memorandum of Points and Authorities  iii          No. 07cv2126 -JM(NLS)
in support of their Motion for Preliminary
Injunction and Conditional Class Certification

1

**Table of Authorities**

2

**Federal Cases**                                                                                                                                        **Page**

3    *In re Activision Sec. Litig.*, 621 F. Supp. 415 (N.D. Cal. 1985) ...............................................15

4    *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ........................................................17, 18

5    *Barahona-Gomez v. Reno*, 167 F.3d 1228 (9th Cir. 1999)..............................................13

6    *Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998) ...............................................17

7    *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) .............................................16, 17, 18

8    *Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141 (1989)............................................11

9    *Bowman v. Nat'l Football League*, 402 F. Supp. 754 (D. Minn. 1975) ..........................14 n.2

10   *Caroline C. v. Johnson*, 174 F.R.D. 452 (D. Neb. 1996) .................................................17

11   *Cason v. Nissan Motor Acceptance Corp.*, 212 F.R.D. 518 (M.D. Tenn. 2002) ...............15 n.3

12   *Cent. Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993)..........................15

13   *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138 (N.D. Cal. 2005)............................5

14   *In re Data Access Systems Sec. Litig.*, 103 F.R.D. 130 (D.N.J. 1984) ...............................18

15   *Earth Island Inst. v. Evans*, 256 F. Supp. 2d 1064 (N.D. Cal. 2003) ......................................11

16   *eBay, Inc. v. Bidder's Edge*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000) .....................................13

17   *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389 (9th Cir. 1984)  ........................................3 n.1

18   *Fraser v. Major League Soccer, LLC*, 180 F.R.D. 178 (D. Mass. 1998) ..........................15 n.3

19   *Gratz v. Bollinger*, 539 U.S. 244 (2003) .....................................................................18 n.4

20   *Guckenberger v. Boston Univ.*, 957 F. Supp. 306 (D. Mass. 1997) ..................................15 n.3

21   *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124 (9th Cir. 2002) ...........................15

22   *Hicks v. Morgan Stanley & Co.*,
          No. 01-10071, 2003 U.S. Dist. LEXIS 11972 (S.D.N.Y. July 16, 2003)...............18 n.4
23

     *Howe v. Varity Corp.*,
24        No. 88-1598, 1989 U.S. Dist. LEXIS 17521 (S.D. Iowa July 14, 1989)...............14 n.2

25   *Justin v. City of Los Angeles*,
          No. 00-12352, 2000 U.S. Dist. LEXIS 17881 (C.D. Cal. Dec. 5, 2000)......................13
26

     *Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982)......................................15-16
27

     *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) .......................................................................18
28

     *O'Connor v. Boeing North Am., Inc.*, 180 F.R.D. 359 (C.D. Cal. 1997).................................17

Plaintiffs' Memorandum of Points and Authorities  iv                                   No. 07cv2126 -JM(NLS)
in support of their Motion for Preliminary
Injunction and Conditional Class Certification

**Table of Authorities**

**Federal Cases**          **Page**

*In re Niles*, 106 F.3d 1456 (9th Cir. 1997)........................................................................7

*Premier Nutrition, Inc. v. Organic Food Bar, Inc.*,
    475 F. Supp. 2d 995 (C.D. Cal. 2007) .............................................................3 n.1

*Gilder v. PGA Tour, Inc.*, 936 F.2d 417 (9th Cir. 1991) .........................................10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .............................17, 18

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
    944 F.2d 597 (9th Cir. 1991) ..........................................................................10-11

*In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346 (N.D. Cal. 2005)..................16

*Santiago v. Philadelphia*, 72 F.R.D. 619 (E.D. Pa. 1976).......................................15

*Schreiber v. NCAA*, 167 F.R.D. 169 (D. Kan. 1996)........................................15 n.3

*Sweet v. Pfizer*, 232 F.R.D. 360 (C.D. Cal. 2005)............................................16, 17

*Moeller v. Taco Bell Corp.*, 220 F.R.D. 604 (N.D. Cal. 2004) ................................16

*Morgan v. UPS of Am.*, 169 F.R.D. 349 (E.D. Mo. 1996)................................15 n.3

*Saga Int'l v. John D. Brush & Co.*, 984 F. Supp. 1283 (C.D. Cal. 1997) .................7

*Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113 (9th Cir. 2005)....................8, 13

*Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643 (9th Cir. 1988) ................................9

*Smith v. Univ. of Wa. Law Sch.*, 2 F. Supp. 2d 1324 (W.D. Wash. 1998)...............17

*Soc'y for Individual Rights, Inc. v. Hampton*, 528 F.2d 905 (9th Cir. 1975) ..........14

*Snepp v. United States*, 444 U.S. 507 (1980)..................................................11-12

*Towers v. Titus*, 5 B.R. 786 (N.D. Cal. 1979).......................................................6-7

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981) ...........................................3 n.1

*Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609 (9th Cir. 1989) ......................10

*Wakefield v. Monsanto Co.*, 120 F.R.D. 112 (E.D. Mo. 1988)........................15 n.3

*Walker v. Pierce*, 665 F. Supp. 831 (N.D. Cal. 1987)...........................................13

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) ...........................................10, 16

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994)...............................................14

*Weathers v. Peters Realty Corp.*, 499 F.2d 1197 (6th Cir. 1974)....................15 n.3

Plaintiffs' Memorandum of Points and Authorities  v        No. 07cv2126 -JM(NLS)
in support of their Motion for Preliminary
Injunction and Conditional Class Certification

1

**Table of Authorities**

2

**Federal Cases**                                                                                               **Page**

3

*In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267 (S.D.N.Y. 2003)....................................18 n.4

4

**Federal Rules**                                                                                               **Page**

5

Fed. R. Civ. P. 65...............................................................................................................13

6

Fed. R. Civ. P. 23...............................................................................................................14

7

Fed. R. Evid. 804 ............................................................................................................3 n.1

8

**California Cases**                                                                                             **Page**

9

*Bainbridge v. Stoner*, 16 Cal. 2d 423, 106 P.2d 423 (1940) .......................................................6

10

*Barquis v. Merchs. Collection A'ssn*, 7 Cal. 3d 94, 496 P.2d 817 (1972) ...............................11

11

*Colgan v. Leatherman Tool Group, Inc.*,
    135 Cal. App. 4th 663, 38 Cal. Rptr. 3d 36 (Cal. Ct. App. 2006) ........................5, 8, 10

12

*Comm. on Children's TV v. General Foods Corp.*, 35 Cal. 3d 197, 673 P.2d 660 (1983) .........5

13

*Consumer Advocates v. Echostar Satellite Corp.*,
    113 Cal. App. 4th 1351, 8 Cal. Rptr. 3d 22 (Cal. Ct. App. 2003) ...............................5, 9

14

*Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 999 P.2d 706 (2000)...............8

15

*GHK Assocs. v. Mayer Group*,
    224 Cal. App. 3d 856, 274 Cal. Rptr. 168 (Cal. Ct. App. 1990) ................................6, 9

16

17

*Heckmann v. Ahmanson*, 168 Cal. App. 3d 119, 214 Cal. Rptr. 177 (Cal. Ct. App. 1985) ........9

18

*Herr v. Nestlé U.S.A., Inc.*,
    109 Cal. App. 4th 779, 135 Cal. Rptr. 2d 477 (Cal. Ct. App. 2003) ............................8

19

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 45 P.3d 243 (2002) .........................................................5

20

*Ornbaun v. Main*, 198 Cal. App. 2d 92, 17 Cal. Rptr. 631 (Cal. Ct. App. 1961).....................6

21

*Outboard Marine Corp. v. Superior Court*,
    52 Cal. App. 3d 30, 124 Cal. Rptr. 852 (Cal. Ct. App. 1975)....................................5

22

23

**California Statutes**                                                                                         **Page**

24

Cal. Bus. & Prof. Code § 17203 (2007)...........................................................................1, 6

25

Cal. Civ. Code § 1770 (2007)........................................................................................1, 8-9

26

Cal. Civ. Code § 2224 (2007)..............................................................................................6

27

Cal. Civ. Code § 1780 (2007).........................................................................................6, 11

28

Cal. Civ. Code § 3343 (2007) ..............................................................................................4

Plaintiffs' Memorandum of Points and Authorities  vi                            No. 07cv2126 -JM(NLS)
in support of their Motion for Preliminary
Injunction and Conditional Class Certification

1

**Table of Authorities**

2

**Miscellaneous**                                                                                            **Page**

3

Restatement (First) of Restitution § 160 (1937)...........................................................................6

4

Restatement (Third) of Unfair Competition, § 2, cmt. a. (1995)...........................................10

5

Sony Kabushiki Kaisha, Form 20-F, at 5, at
http://edgar.sec.gov/Archives/edgar/data/313838/000114554907001097/k01348e20vf.htm

6

       (June 21, 2007) .......................................................................................................12, 16

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Memorandum of Points and Authorities  vii                    No. 07cv2126 -JM(NLS)
in support of their Motion for Preliminary
Injunction and Conditional Class Certification

1
2

**PLAINTIFFS' MEMORANDUM AND POINTS
OF AUTHORITY IN SUPPORT OF THEIR MOTION FOR
PRELIMINARY INJUNCTION AND CLASS CERTIFICATION**

3      Through their Motion for Preliminary Injunction and Class Certification, Plaintiffs

4  Jason Demas and John Renninger ("Plaintiffs") seek to impose a constructive trust on those

5  funds Defendant Sony Electronic, Inc. ("SEI") earned through its sales of its KDS XBR1

6  series of television sets ("XBR1 Televisions"). SEI deceptively represented to its retailer

7  customers that the XBR1 Televisions were capable of 1080p resolution, and these customers

8  passed that misrepresentation down to injured end users like the Plaintiffs. SEI concealed

9  from its customers and from end-users like the Plaintiffs that the XBR1 Televisions had no

10  way to receive a 1080p signal, and so their supposed ability to display a 1080p resolution was

11  useless, irrelevant, and misleading.

12      Below, this Brief explains the meaning of SEI's representations that the KDS XBR1

13  series of television sets were capable of 1080p resolution, the extent of those representations

14  and their materiality to consumers – and specifically, to Plaintiffs – in greater detail. These

15  representations created a likelihood that consumers like the Plaintiffs would be misled about

16  the XBR1 Televisions' capabilities, and a corresponding duty to disclose the fact that the

17  XBR1 Televisions did not have any connections which could receive 1080p signals, so the

18  XBR1 Televisions will never display 1080p media content at 1080p resolution. SEI's

19  marketing of the XBR1 Televisions violates both California's Consumer Legal Remedies Act

20  ("CLRA") (Cal. Civ. Code § 1770) and Unfair Competition Law ("UCL") (Cal. Bus. & Prof.

21  Code § 17203). SEI's statutory violations, in turn, invest in Plaintiffs several equitable rights

22  – the right to a constructive trust, and the right to an injunction preventing further misleading

23  marketing of the XBR1 Televisions and requiring corrective marketing.

24  **I.     Factual Background**

25      **A.     Progressive Scan Resolution Is a Material Fact For Television Purchasers**

26      This case is about television resolution. Resolution measures how detailed and sharp

27  an image a television can display. There are two resolutions relevant to this case: "1080i" and

28  "1080p." The number portion of these resolutions, "1080," indicates that a television's display

Plaintiffs' Memorandum of Points and Authorities  1                    No. 07cv2126 -JM(NLS)
in support of their Motion for Preliminary
Injunction and Conditional Class Certification

would contain 1080 vertical lines of pixels across the display. The "p" portion of the 1080p

designation indicates a progressive scan format, meaning that the television "fills in" every

line of pixels for every frame shown on the television's display. (For that reason, marketing

which indicates a television marketing has "native" or "full" line resolution denotes that the

television has progressive scan resolution.) By contrast, a television which uses an interlaced

scan format (which may be designated with an "i") fills in every other line of pixels for every

frame shown on the television's display. Contemporary interlaced displays deinterlace signals

before the signal is shown on the screen. Deinterlacing involves a variety of techniques that

extrapolate from the existing pixels to fill in the missing lines of pixels. Deinterlacing does

not result in the same image a progressive scan would provide, and creates various defects in

the image which are noticeable to consumers. In short, a television that can display

progressive scan format can provide a smoother, cleaner image than an interlaced scan format.

Thus, a television's progressive scan capability was a material fact to Plaintiffs and other

consumers. (Demas Decl. ¶¶ 5, 10; Renninger Decl. ¶¶ 3, 8.)

**B.    SEI Misleadingly Marketed the XBR1 Televisions as Having 1080p Resolution, When in Fact the XBR1 Televisions Could Not Receive a 1080p Signal**

SEI marketed the XBR1 Televisions as having 1080p resolution. SEI prepared and

distributed marketing specifications for the models the Plaintiffs purchased (a KDS R60XBR1

television and a KDS R50XBR1 television). These marketing specifications represent that

these televisions had a "Native Resolution: 1080p" and contained SXRD panels which

> [met] and exceed[ed] the demands of a High Definition image at its ***full 1080 line resolution***. Digitally transmitted High Definition signals can contain over 2 million individual detail points that need to be displayed accurately and rapidly. SXRD displays those 2 million detail points per SXRD panel accurately since the 3 SXRD panels actually ***contain enough pixels to fully display a 1080 line picture without interlacing it***.

(Preston Decl. ¶¶ 2, 3.) (emphasis added). Demas purchased his television from Grant's

Appliances in Aurora, Illinois. (Demas Decl. ¶ 2.) When he purchased his television, he

expressly asked for televisions which were capable of the highest resolution commercially

available. (Demas Decl. ¶ 3.) Grant's Appliances informed Demas that the highest

Plaintiffs' Memorandum of Points and Authorities   2                    No. 07cv2126 -JM(NLS)
in support of their Motion for Preliminary
Injunction and Conditional Class Certification

commercially available resolution was 1080p, and that the KDS R60XBR1 television model

was capable of 1080p resolution. (Demas Decl. ¶¶ 3-5.) Likewise, Renninger concluded that

reviewed Sony's sales literature and concluded that his KDS R50XBR1 television was

capable of 1080p resolution. Plaintiffs were not informed that their televisions did not have

any connections that could *receive* 1080p signals – and thus, in fact, Plaintiffs' televisions

could never display 1080p resolutions because they had no way of receiving a 1080p signal.

(Demas Decl. ¶¶ 7-8; Renninger Decl. ¶¶ 5-6.) Neither Plaintiff knew this at the time of their

respective purchases; Demas only discovered that his television could not receive a 1080p

signal when he purchased a Sony PlayStation 3 and found that his television would not

support a 1080p resolution. (Demas Decl. ¶ 9.) Demas informed Reninnger of his

predicament, and Renninger had his son confirm that his television was also incapable of

receiving a 1080p signal. (Demas Decl. ¶ 11; Renninger Decl. ¶ 7.) Demas later spoke with

the manager at Grant's Appliances to complain about the situation. From that conversations,

he learned that SEI's sales representative had misrepresented to the salespeople at Grant's

Appliances that the KDS XBR1 series of televisions were capable of 1080p resolution, and

that the Grant's Appliances salespeople had simply passed this misrepresentation on to

Plaintiffs. (Demas Decl. ¶ 12.)[1]

## C.     SEI's Misleading Marketing of the XBR1 Televisions Threatens Continued Consumer Confusion to This Day

SEI's misleading marketing of the XBR1 Televisions continues to at least November

13, 2007. The misleading marketing specifications are still available from SEI's website.

---

[1] Demas's testimony falls within the "statements against interest" exception to the hearsay rule. See Fed. R. Evid. 804(b)(3) ("A statement which was at the time of its making . . . so far tended to subject the declarant to civil . . . liability"). Even if it did not, the application of the hearsay rule applies with far less force in the context of a motion for preliminary injunction. "A preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing . . ." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394-95 (1981) . "The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight. . ." *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (quoted by *Republic of Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988)). *See also Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 475 F. Supp. 2d 995, 1000 n.1 (C.D. Cal. 2007) (inadmissible hearsay was evidentiary ground for preliminary injunction).

Plaintiffs' Memorandum of Points and Authorities   3
in support of their Motion for Preliminary
Injunction and Conditional Class Certification                                    No. 07cv2126 -JM(NLS)

(Preston Decl. ¶ 2, 3.) Further, simple Internet searches reveal that the XBR1 Televisions remain widely available from a variety of retailers. (*Id.* ¶¶ 4-5.) In fact, ***Sony continues to sell refurbished KDS R50XBR1 model televisions directly to the public, using some of the exact same misleading representations*** ("full 1080 line resolution" and "enough pixels to fully display a 1080 line picture without interlacing it"). (*Id.* ¶ 5.) Indeed, ***many of Sony's retailer customers pass on the same misrepresentations that ensnared the Plaintiffs***. (*Id.* ¶¶ 7-8.) SEI's marketing of the XBR1 Televisions has created a serious risk of consumer confusion.

Plaintiffs paid more than they would have if they had known the truth about their televisions' vaunted 1080p resolution. (Demas Decl. ¶ 10; Renninger Decl. ¶ 8.) The Court may presume, as a matter of California law, that the purchasers of XBR1 Televisions – both retailers and end-users – paid a premium for the XBR1 Televisions' illusory 1080p resolution capability. *See* Cal. Civ. Code § 3343(a) (2007) ("One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received . . .") That premium was passed from SEI's retailer customers to end purchasers of the XBR1 Televisions, i.e, members of the Class.

**II.      Given the Misleading Nature of SEI's Marketing, Plaintiffs Are Entitled to the Relief Sought in the Motion for Preliminary Injunction Under the UCL and CLRA**

SEI has represented that the XBR1 Televisions are capable of 1080p resolution. (Preston Decl. ¶¶ 2, 3, 6; Demas Decl. ¶ 12; Renninger Decl. ¶ 3.) This statement is misleading because it conceals the fact that XBR1 Televisions cannot receive a 1080p signal. (Demas Decl. ¶¶ 5-8; Renninger Decl. ¶¶ 3-6.) Plaintiffs purchased their XBR1 Televisions in reliance of the belief that their televisions could receive and display 1080p signal. (Demas Decl. ¶ 9; Renninger Decl. ¶ 7.) In fact, it is impossible for a XBR1 Television to display a 1080p signal because a XBR1 Television could never receive a 1080p signal; the XBR1 Televisions do not have any connections capable receiving such a signal. (Demas Decl. ¶ 9; Renninger Decl. ¶ 7.)

Plaintiffs' Memorandum of Points and Authorities   4
in support of their Motion for Preliminary
Injunction and Conditional Class Certification

No. 07cv2126 -JM(NLS)

**A.     SEI's Misleading Marketing Gives Rise to UCL and CLRA Claims**

SEI's representations that the XBR1 Televisions were capable of a 1080p resolution are misleading, and constitute a sufficient basis for violations of both the UCL and the CLRA. Plaintiffs' UCL claim only requires "that members of the public are likely to be deceived." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951, 45 P.3d 243, 250 (2002) (citations omitted). "Allegations of actual deception, reasonable reliance, and damage are unnecessary" for UCL claims. *Comm. on Children's TV v. General Foods Corp.*, 35 Cal. 3d 197, 211, 673 P.2d 660, 668 (1983). The CLRA and UCL share the same "consumer confusion" standard. *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360, 8 Cal. Rptr. 3d 22, 29 (Cal. Ct. App. 2003) (cited by *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 680, 38 Cal. Rptr. 3d 36, 46 (Cal. Ct. App. 2006)). "Conduct that is 'likely to mislead a reasonable consumer' thus violates the CLRA." *Colgan*, 135 Cal. App. 4th at 680, 38 Cal. Rptr. 3d at 46.

SEI cannot defend itself with the argument that its statements were literally true – that the XBR1 Televisions' screens were capable of 1080p resolutions, and that SEI had no duty to disclose that the XBR1 Televisions could not receive 1080p signals. The UCL and CLRA prohibit misleading omissions of material facts, not just affirmative fraud. *Kasky*, 27 Cal. 4th at 951, 45 P.3d at 250 (UCL prohibits representations which "although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public"); "A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable." *Consumer Advocates*, 113 Cal. App. 4th at 1362, 8 Cal. Rptr. 3d at 30. SEI's representations about the XBR1 Televisions' 1080p resolution capability was misleading without the corresponding disclosure that the XBR1 Televisions could not receive 1080p signal and could never display 1080p images. *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 38, 124 Cal. Rptr. 852, 857 (Cal. Ct. App. 1975) (CLRA prohibits omission of material facts). *See also Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144-46 (N.D. Cal. 2005) (omitted disclosure of defects in non-metal manifolds could violate UCL, CLRA).

Plaintiffs' Memorandum of Points and Authorities   5
in support of their Motion for Preliminary
Injunction and Conditional Class Certification                                    No. 07cv2126 -JM(NLS)

1

**B.     Imposition of a Constructive Trust and an Accounting are Ancillary Remedies to Claims for Restitution Under the UCL and CLRA**

2

3     The UCL and CLRA provide Plaintiffs with broad injunctive and restitutionary

4 remedies for their claims. Cal. Civ. Code § 1780(a) (2007) (relief available under CLRA

5 includes "order enjoining the methods, acts, or practices" violative of the CLRA, restitution,

6 other relief); Cal. Bus. & Prof. Code 17203 (2007) (authority to enjoin persons engaged in

7 unfair competition; restitution).

8     A constructive trust is incidental to Plaintiffs' restitution remedies. "The theory of a

9 constructive trust was adopted by equity as a remedy to compel one to restore property to

10 which he is not justly entitled, to another." *Bainbridge v. Stoner*, 16 Cal. 2d 423, 428, 106 P.

11 2d 423, 426 (1940). "Where a person holding title to property is subject to an equitable duty

12 to convey it to another on the ground that he would be unjustly enriched if he were permitted

13 to retain it, a constructive trust arises." Restatement (First) of Restitution § 160 (1937) (cited

14 by *Bainbridge*, 16 Cal. 2d at 428-29, 106 P.2d at 426).

15     California law provides for a constructive trust whenever a defendant "gains a thing by

16 fraud . . . or other wrongful act . . . unless he has some other and better right thereto." Cal.

17 Civ. Code § 2224 (2007). "The only conditions necessary to create a constructive trust are

18 those stated" in California Civil Code sections 2223 and 2224. *GHK Assocs. v. Mayer Group*,

19 224 Cal. App. 3d 856, 878, 274 Cal. Rptr. 168, 182 (Cal. Ct. App. 1990). "Under section 2224

20 of the Civil Code, the courts have even gone so far as to hold that the theory behind the

21 creation of [a constructive] trust extends to practically any case where there is a wrongful

22 acquisition of property to which another is entitled." *Ornbaun v. Main*, 198 Cal. App. 2d 92,

23 99, 17 Cal. Rptr. 631, 634 (Cal. Ct. App. 1961) (citation, punctuation omitted). *See also GHK*,

24 224 Cal. App. 3d at 878, 274 Cal. Rptr. at 182 ("a constructive trust may be imposed in

25 practically any case where there is a wrongful acquisition or detention of property to which

26 another is entitled").

27     Likewise, the accounting requested in the Motion is incidental to the constructive trust.

28 A "duty to account [is] imposed [on] a constructive trustee"; an accounting on an "otherwise

---

Plaintiffs' Memorandum of Points and Authorities  6
in support of their Motion for Preliminary
Injunction and Conditional Class Certification

No. 07cv2126 -JM(NLS)

legal claim" may also be required where it is "incidental to a demand for an injunction or other equitable relief." *Towers v. Titus*, 5 B.R. 786, 793 (N.D. Cal. 1979) (basing an accounting on a constructive trust).

> An accounting, which involves a scrutiny of business records to calculate the amount of rents, profits and other payments captured by a wrongful grantee, is frequently a component of a constructive trust. It is essentially a form of disclosure, predicated upon the legal inability of a plaintiff to determine if, or how much, money is due him from another.

*Id. See also id.* at 794 (stating that the "firmest . . .ground" for an accounting is "the duty to account incumbent upon a constructive trustee"). An accounting shifts the burden of proving that SEI retained all monies from Plaintiffs and the Class to SEI – SEI must account for (and sequester) the sums it received from Plaintiffs and is liable for the sums not retained:

> The duty of a trustee . . . to keep regular and correct accounts is imperative. If he does not, every presumption of fact is against him. He cannot impose upon his principal . . . the obligation to prove [what] he has actually received . . . . By failing to keep and submit accounts, he assumes the burden of repelling the presumption and disproving negligence and faithlessness. . . . He is prima facie accountable for all the rents of all the properties, during the whole period of his agency, and he cannot be discharged from such accountability, except by proof that he did not collect them, and could not collect them by the faithful exercise of due diligence.

*In re Niles*, 106 F.3d 1456, 1461 (9th Cir. 1997) (citations, punctuation omitted).

Finally, the proposed constructive trust/accounting comports with "the outer scope of an injunction" defined by Federal Rule 65(d). *Saga Int'l v. John D. Brush & Co.*, 984 F. Supp. 1283, 1286 (C.D. Cal. 1997). Rule 65(d) ensures that an injunction bind "a party [to the litigation], those who aid and abet a party, and those in privity with a party." *Id.* "[C]ourts [have] found aiders and abetters liable for helping a party evade an injunction even before Rule 65(d) existed . . . The Rule merely codifie[s] the common law practice of refusing to let a party violate an injunction through intermediaries." *Id.*

C. **UCL and CLRA Also Provide Plaintiffs with Right to Injunction Against Further False Advertising and a Corrective Advertising Remedy**

Courts have also recognized that the UCL and CLRA provide for the miscellaneous injunctive relief sought under the Motion: the prohibition on further marketing of the 1080p resolution capabilities of the XBR1 Televisions, and the mandatory corrective disclosures.

Plaintiffs' Memorandum of Points and Authorities   7                    No. 07cv2126 -JM(NLS)
in support of their Motion for Preliminary
Injunction and Conditional Class Certification

The prohibitory injunction sought by the Motion will vindicate the UCL and CLRA's legislative aims by limiting the consumer confusion created by SEI's misleading marketing of the XBR1 Televisions which remain in SEI's distribution channels. *Cf. Herr v. Nestlé U.S.A., Inc.*, 109 Cal. App. 4th 779, 135 Cal. Rptr. 2d 477 (Cal. Ct. App. 2003) (injunction under UCL prohibiting future age discrimination by defendant). Likewise, the UCL and CLRA authorize the mandatory corrective disclosures sought in the Motion, because they redress consumer confusion. *Colgan*, 135 Cal. App. 4th at 672-73, 677-78, 38 Cal. Rptr. 3d at 41, 44-45 (affirming injunction requiring corrective advertising).

## III.    The Applicable Law Supports Plaintiffs' Motion for Preliminary Injunction

The Ninth Circuit has provided two tests for preliminary injunctive relief under Federal Rule 65. The traditional criteria are 1) likelihood of success on the merits, 2) risk of irreparable injury without a preliminary injunction, 3) a balance of hardships favoring the movant, and 4) advancement of the public interest. *Save Our Sonoran, Inc. v. Flowers*, 408 F. 3d 1113, 1120 (9th Cir. 2005). Alternatively, the movant may demonstrate "*either* a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Id*. (emphasis in original, citations omitted). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum." *Id*. This brief establishes that Plaintiffs are likely to succeed on their claims, that the applicable law presumes irreparable harm on Plaintiffs' claims, and that the balance of harm and the public interest favors Plaintiffs' requested relief.

### A.    Plaintiffs Are Likely to Prevail on Their UCL and CLRA Claims

Plaintiffs' evidence establishes a *prima facie* case of liability under the UCL and CLRA for SEI's misleading marketing of the XBR1 Televisions. SEI cannot establish a defense to liability by asserting it had an innocent intent – "[t]he UCL imposes strict liability [on] conduct that constitutes an unfair business practice." *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 181, 999 P.2d 706, 717 (2000). *Cf.* Cal. Civ. Code § 1770 (2007)

Plaintiffs' Memorandum of Points and Authorities   8
in support of their Motion for Preliminary
Injunction and Conditional Class Certification                                    No. 07cv2126 -JM(NLS)

(intent is not an element of most CLRA violations); *Consumer Advocates*, 113 Cal. App. 4th at 1360, 8 Cal. Rptr. 3d at 29 (CLRA and UCL share the same standard of liability).

**B.    Irreparable Harm Is Presumed Where Plaintiffs Demonstrate Their Right to a Constructive Trust**

California law presumes irreparable harm where Plaintiffs can demonstrate a claim to a constructive trust. "In California, as in most jurisdictions, an action in equity to establish a constructive trust does not depend on the absence of an adequate legal remedy. . . . A constructive trust is the usual theory upon which a plaintiff recovers wrongfully acquired assets." *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119, 134, 214 Cal. Rptr. 177, 187 (Cal. Ct. App. 1985) (affirming motion for preliminary injunction imposing constructive trust, citations, punctuation omitted). *See also GHK*, 224 Cal. App. 3d at 878, 274 Cal. Rptr. at 182 (rejecting argument that irreparable harm was required for constructive trust, citing *Heckman*, 168 Cal. App. 3d at 134, 214 Cal. Rptr. at 187). California law presumes irreparable harm where a constructive trust is otherwise available because

> [m]oney damages are . . . inadequate if, by that term, it is meant plaintiff is entitled to a judgment equal to the amount of money defendant wrongfully acquired plus the legal rate of interest. . . . The purpose of the constructive trust remedy is to prevent unjust enrichment and to prevent a person from taking advantage of his own wrong. . . . Thus, under a constructive trust upon money, the plaintiff is entitled to trace the fund to its ultimate product or profit. . . . By the time plaintiff obtains a final judgment, the original fund may have grown far greater than the legal rate of interest would recognize. To allow the defendant to pocket the difference would reward the defendant for his wrongdoing.

*Heckmann*, 168 Cal. App. 3d at 135, 214 Cal. Rptr. at 188 (citations, punctuation omitted). California courts continue to apply and enforce *Heckmann*'s holding – this is not an isolated case, but contemporary California law. While federal jurisprudence may or may not recognize a presumption of irreparable harm supporting a constructive trust, *Heckmann* applies and controls Plaintiffs' rights to a preliminary injunctive where Plaintiffs' claims arise under California law and there is no conflict between *Heckmann* and Rule 65. *Cf. Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 647 (9th Cir. 1988) (California law, not federal law, controls movant's right to preliminary injunction in diversity case in federal court).

Plaintiffs' Memorandum of Points and Authorities   9
in support of their Motion for Preliminary
Injunction and Conditional Class Certification                    No. 07cv2126 -JM(NLS)

### C.    Irreparable Harm Is Presumed Where SEI's Misrepresentations Create Consumer Confusion

Plaintiffs' declarations adequately establish the consumer confusion caused by SEI's marketing. Plaintiffs's CLRA and UCL claims do not require proof of consumer confusion by extrinsic evidence, such as expert testimony or consumer surveys, which might be necessary in Lanham Act cases. *Colgan*, 135 Cal. App. 4th at 681-82, 38 Cal. Rptr. 3d at 47-48. Rather, Plaintiffs can demonstrate an actionable likelihood of consumer confusion through their declarations – which show the disparity between the reasonable expectation that the XBR1 Televisions would display 1080p signals at a 1080p resolution, created by SEI's representations, and the reality that the XBR1 Televisions could not actually receive any 1080p signal. *Cf. id.*, 135 Cal. App. 4th at 682, 38 Cal. Rptr. 3d at 48-49.

Likelihood of consumer confusion is the classic factor leading to a presumption of irreparable harm. "[O]nce the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted." *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n.3 (9th Cir. 1989).

> Unless prospective purchasers can accurately compare the products offered by competing sellers, the free enterprise system cannot operate efficiently. The use of deceptive representations in the marketing of goods and services impairs the ability of purchasers to choose intelligently among competing products. As confidence in the truth of advertising diminishes, prospective purchasers may be forced to expend additional resources in examining and sampling competing products.

Restatement (Third) of Unfair Competition, § 2, cmt. a. (1995). SEI's continued misrepresentations about the capabilities of the XBR1 Televisions threatens irreparable harm – further erosion of Class members' ability and inclination to trust commercial marketing, and to thereby avoid inefficient examinations and sampling of competing products. This erosion is not susceptible to traditional damage calculations. Where "[t]here is no way to calculate the value of" of the movant's damages, a movant for preliminary injunction has no adequate legal remedies and irreparable harm exists. *Walters v. Reno*, 145 F.3d 1032, 1048 (9th Cir. 1998). "[W]here the threat of injury is imminent and the measure of that injury defies calculation, damages will not provide a remedy at law." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 423 (9th Cir. 1991). *See also Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944

Plaintiffs' Memorandum of Points and Authorities  10
in support of their Motion for Preliminary
Injunction and Conditional Class Certification

No. 07cv2126 -JM(NLS)

F.2d 597, 603 (9th Cir. 1991) (where "damages would be difficult to valuate," they

"constitute[] possible irreparable harm").

The presumption of irreparable harm consumer confusion is not limited to competitor

plaintiffs. The California Supreme Court has specifically rejected arguments limiting the

UCL's protections to competitors. *Barquis v. Merchs. Collection A'ssn*, 7 Cal. 3d 94, 108-13,

496 P.2d 817, 827-30 (1972) (Legislature "extended to the entire consuming public the

protection once afforded only to business competitors" by enacting UCL). The CLRA's

application is expressly limited to consumers. *See* Cal. Civ. Code § 1780(a) (2007) (limiting

right of action to consumers). *See also Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141,

157 (1989) (goal of unfair competition law is "the protection of consumers, not the protection

of producers"). Federal courts have already applied consumer confusion as an equitable factor

as a consideration in favor of granting a preliminary injunction outside of the traditional

competitor-plaintiff context. *Earth Island Inst. v. Evans*, 256 F. Supp. 2d 1064, 1077 (N.D.

Cal. 2003) (potential consumer confusion supported injunction prohibiting Secretary of

Commerce from enacting regulations that allowed tuna caught using purse seine nets to be

labeled "dolphin safe").

> **D.      The Balance of Hardships and Public Interest Favor Granting the Motion, Because Plaintiffs' Proposed Remedies are Carefully Tailored to Protect their Interests and the Class's Interests**

The balance of hardships between SEI, and Plaintiffs, the Class Members, and the

public interest tip sharply in favor of the injunction because the injunction is neatly tailored to

protect Plaintiffs' interests, and imposing minimal hardships on SEI.

Plaintiffs' right to the constructive trust and the accounting sought in the Motion are

thoroughly established in California's common law, and Plaintiffs would be prejudiced by the

denial of those rights. A constructive trust is an inherently balanced remedy which limits the

harm visited on the trustee: it "deals fairly with both parties by conforming relief to the

dimensions of the wrong." *Snepp v. United States*, 444 U.S. 507, 515 (1980).

> [T]he trust remedy simply requires [the trustee] to disgorge the benefits of [its
> statutory violations]. Since the remedy is swift and sure, it is tailored to deter
> those who would [violate the UCL and the CLRA.] And since the remedy

Plaintiffs' Memorandum of Points and Authorities  11                          No. 07cv2126 -JM(NLS)
in support of their Motion for Preliminary
Injunction and Conditional Class Certification

reaches only funds attributable to the [statutory violations], it cannot saddle [the trustee] with exemplary damages out of all proportion to [its] gain.

*Id.* at 515-16 (constructive trust "protects" both parties). Here, too, the constructive trust sought by Plaintiffs is a balanced and tailored to address SEI's UCL and CLRA violations. The proposed constructive trust requires only that sequester the constructive trust's *corpus*, and does not impose on SEI significant out-of-pocket expenses; indeed, if the dispute is resolved in its favor, SEI incurs no expense and may simply restore the constructive trust's *corpus* to itself.

Likewise, the Motion is narrowly tailored to counteracting the damage to consumers' confidence in commercial marketing threatened by the misleading marketing for the XBR1 Televisions that remain at large in the market. The prohibitory injunction does not stop SEI from marketing or selling the XBR1 Televisions – it only requires that if SEI does so, it must also disclose the fact that the televisions do not have a connection that can receive a 1080p signal. Further, the corrective advertising sought in the Motion mandates that SEI take minimal steps to undo the consumer confusion caused by its misleading marketing.  These remedies would have the salutory effect of protecting and restoring consumer confidence in the representations of sellers in the marketplace, and thereby benefits both Plaintiffs, Class members, and the public at large – as well as SEI itself. The public interest favors the injunction because it protects against the consumer confusion. *Evans*, 256 F. Supp. 2d at 1077.

The only out-of-pocket expenses SEI can be expected to incur under the Motion relate to performing the accounting and distributing the corrective disclosures. These costs should be put into perspective: SEI is the electronics subsidiary of Sony Kabushiki Kaisha. Sony Kabushiki Kaisha is a multinational conglomerate with revenue approaching $75 billion for the fiscal year ending March 2007. Sony Kabushiki Kaisha, Form 20-F, at 5, *at* http://edgar.sec.gov/Archives/edgar/data/313838/000114554907001097/k01348e20vf.htm (June 21, 2007) (assuming a conversion rate of $.009 per ¥1). The Sony group's television sales *alone* totaled to *$11 billion* for fiscal year 2007. *Id.* at F-68 (same). The incidental expenses caused by the injunction are minor, and cannot be said to threaten the viability of

Plaintiffs' Memorandum of Points and Authorities  12
in support of their Motion for Preliminary
Injunction and Conditional Class Certification

No. 07cv2126 -JM(NLS)

SEI's commercial operations. Further, SEI's marketing of the XBR1 Televisions clearly violated Plaintiffs' rights under the UCL and CLRA, and any costs SEI might incur by remedying its UCL and CLRA violations cannot be weighed against the preliminary injunction sought in this Motion. *See eBay, Inc. v. Bidder's Edge*, 100 F. Supp. 2d 1058, 1069 (N.D. Cal. 2000) (it is "reversible error for a district court to even consider" impact of injunction on defendant's business practices where business practices were in clear violation of plaintiff's rights).

> **E.      The Court Should Impose No Bond or a Minimal Bond**

Federal Rule of Civil Procedure 65(c) requires that a movant for a preliminary injunction give "security . . . in such sum as the court deems proper" before any preliminary injunction issues. Fed. R. Civ. P. 65(c). However, Rule 65(c) "invest[s] the district court with discretion as to the amount of security required, if any." *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (citing three other circuit court cases); *Justin v. City of Los Angeles*, No. 00-12352, 2000 U.S. Dist. LEXIS 17881, at *6-7 (C.D. Cal. Dec. 5, 2000) (bonds under Rule 65(c) have "been dispensed with entirely where there was no proof of likelihood of harm to the party enjoined"). Consequently, the Ninth Circuit boasts "long-standing precedent that requiring nominal bonds is perfectly proper in public interest litigation." *Save Our Sonoran*, 408 F.3d at 1126. *See also Walker v. Pierce*, 665 F. Supp. 831, 843-44 (N.D. Cal. 1987) (waiving bond requirement for class representative). Plaintiffs' status as class representatives, their inability to absorb the expenses of a massive commercial empire like SEI, and the public interest features of the relief sought all weigh in favor of a minimal bond, or no bond at all. (*Cf.* Demas Decl. ¶ 13; Renninger Decl. ¶ 8) (Plaintiffs cannot afford a bond over $1,000) *with Barahona-Gomez*, 167 F.3d at 1237 (affirming district court's discretion to require only nominal bond of $1,000); *Justin*, 2000 U.S. Dist. LEXIS 17881, at *38 (where injunction on constitutional claim "pose[d] no risk of pecuniary injury . . . from being restrained and enjoined," class representative exempted from bond)).

Plaintiffs' Memorandum of Points and Authorities  13                    No. 07cv2126 -JM(NLS)
in support of their Motion for Preliminary
Injunction and Conditional Class Certification

1   **III.    Plaintiffs Seek Class Certification Under Rule 23(b)(2) and Rule 23(c)(4) to the**
           **Extent the Court Deems Class Certification Necessary to Obtain the Preliminary**
2          **Injunction**

3          Plaintiffs may not need class certification to obtain the preliminary injunction sought.

4   Ample authority supports the entry of preliminary injunctions to protect a class prior to class

5   certification. *See Washington v. Reno*, 35 F.3d 1093, 1104 (6th Cir. 1994) (class certification

6   sometimes unnecessary for preliminary injunctions that provide class relief).[2] To the extent

7   that the requested injunction exceeds the Court's equitable powers as to Plaintiffs' individual

8   claims, they seeks class certification for the narrow purpose of effectuating the preliminary

9   injunction. *Cf.* Fed. R. Civ. P. 23(c)(4) (an action may be maintained as a class action "with

10  respect to particular issues"). The instant Motion seeks certification *exclusively* for the

11  purpose of obtaining the injunctive relief sought therein: Plaintiffs have not taken the

12  discovery that typically precedes class certification, and are not attempting to cut corners on

13  the class certification procedure. When due discovery is taken, Plaintiffs will file another

14  motion to certify the class's claims for permanent relief under Rule 23(b)(3). *Cf.* Fed. R. Civ.

15  P. 23(c)(1)(4) (order on class certification can be "altered or amended before final

16  judgment").

17         Rule 23(c)(4) provides more than enough flexibility to certify classes "with respect to

18  particular issues" and not other issues. "It is within the discretion of the trial judge, under

19  Rule 23(c)(4), to limit the issues in a class action to those parts of a lawsuit which lend

20  themselves to convenient use of the class action motif." *Soc'y for Individual Rights, Inc. v.*

21  *Hampton*, 528 F.2d 905, 906 (9th Cir. 1975) (quotation marks, citation omitted, certification

22  of class only for prospective injunctive relief was proper). For instance, "[a] court may certify

23  a Rule 23(b)(3) class for certain claims, allowing class members to opt out, while creating a

24  non-opt-out Rule 23(b)(1) or (b)(2) class for other claims." Manual for Complex Litigation §

25  21.24 (4th ed. 2004).

26              [Rule 23(c)(4)] is particularly helpful in  enabling courts to restructure complex
                cases to meet the . . . requirements for maintaining a class action. . . . [Rule
27

28  [2] *See also Howe v. Varity Corp.*, No. 88-1598, 1989 U.S. Dist. LEXIS 17521, at *52-53 (S.D.
    Iowa July 14, 1989), *rev'd on other grounds*, 896 F.2d 1107 (8th Cir. 1990) (listing cases);
    *Bowman v. Nat'l Football League*, 402 F. Supp. 754, 755 (D. Minn. 1975).

Plaintiffs' Memorandum of Points and Authorities  14                            No. 07cv2126 -JM(NLS)
in support of their Motion for Preliminary
Injunction and Conditional Class Certification

23(c)(4)] is designed to give the court maximum flexibility in handling class actions, its proper utilization will allow a Rule 23 action to be adjudicated that otherwise might have had to be dismissed or reduced to a nonrepresentative proceeding because it appears to be unmanageable.

*In re Activision Sec. Litig.*, 621 F. Supp. 415, 438 (N.D. Cal. 1985) (certification on single issue related to liability). *See also In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1139 (9th Cir. 2002) (remanding with recommendation that the trial court consider "[class] certification only for questions of generic causation common to plaintiffs who suffer from the same or a materially similar disease"); *Cent. Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 184-87 (4th Cir. 1993) (certification on certain issues related to asbestos liability); *Santiago v. Philadelphia*, 72 F.R.D. 619, 629 (E.D. Pa. 1976) (deferring certification, but stating "it is possible that a 23(b)(3) class action might be pursued for certain issues" if class could not be certified under Rule 23(b)(2)). Indeed, many courts have already granted the limited certification sought here: certification of a class for injunctive relief now under Rule 23(b)(2), while deferring the certification of a damages class under Rule 23(b)(3).[3]

### A. Members of the Class Are So Numerous That Joinder Is Impractical

Common sense suggests that members of the Class are numerous enough to support certification under Rule 23(a)(1). The lower limit of the Rule 23(a) numerosity is forgiving. *See Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other*

---

[3] *Fraser v. Major League Soccer, LLC*, 180 F.R.D. 178, 182 (D. Mass. 1998) (certification of only claims for injunctive and declaratory relief is "an appropriate limitation"); *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 326 n. 17 (D. Mass. 1997); *Schreiber v. NCAA*, 167 F.R.D. 169, 176-77 (D. Kan. 1996) (where plaintiffs did not have sufficient evidence to support certification under Rule 23(b)(3) because of defendants failure to comply with discovery deadlines, class certification nonetheless appropriate for injunctive relief only under Rule 23(b)(2)), *amended by Law v. NCAA*, No. 94-205, 1998 U.S. Dist. LEXIS 6608 (D. Kan. Apr. 17, 1998) (class certification under 23(b)(3) ultimately granted, motion to decertify denied); *Morgan v. UPS of Am.*, 169 F.R.D. 349, 358 (E.D. Mo. 1996) (certification under Rule 23(b)(2) only on liability and injunctive relief, certification for damages remedy under Rule 23(b)(3) deferred until liability established); *Wakefield v. Monsanto Co.*, 120 F.R.D. 112, 117-18 (E.D. Mo. 1988) ("recommended procedure" in employment cases is to certify a class on liability issues and injunctive relief, and if liability is found, "to certify the damage phase as a Rule 23(b)(3) class action"). *See also Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200-01 (6th Cir. 1974) ("even if a plaintiff may be unable to state a sub-class for monetary damages with the proper specificity, it may be possible to specify a class for injunctive relief," citing *Korn v. Franchard Corp.*, 456 F.2d 1206 (2d Cir. 1972)); *Cason v. Nissan Motor Acceptance Corp.*, 212 F.R.D. 518, 520-23 (M.D. Tenn. 2002) (denying class certification under Rule 23(b)(2) for disgorgement remedy, but granting certification on purely injunctive and declaratory relief).

Plaintiffs' Memorandum of Points and Authorities  15
in support of their Motion for Preliminary
Injunction and Conditional Class Certification                                No. 07cv2126 -JM(NLS)

*grounds*, 459 U.S. 810 (1982). (classes with 39, 64, and 71 members sufficiently numerous). Again, the Sony group's sales and operating revenue from televisions for fiscal years 2007, 2006, and 2005 amount to $11 billion, $8.35 billion, and $8.29 billion. Sony Kabushiki Kaisha, Form 20-F, at F-68. The XBR1 Televisions was a mass-produced, mass-marketed, interchangeable consumer good: in combination with a public record establishing SEI's involvement in the sale of billions of dollars worth of televisions, it stands to reason SEI sold and marketed XBR1 Televisions on a vast scale. This evidence is "sufficient material to allow [the Court to make an] informed judgment" that there were a sufficient number of consumer purchasers of the XBR1 Televisions to satisfy Rule 23(a)'s numerosity element. *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir. 1975). Plaintiffs do not need "to state the exact number of potential class members, nor is a specific number of class members required for numerosity. . . . A court may make common sense assumptions to support a finding that joinder would be impracticable." *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 351 (N.D. Cal. 2005) (citation, quotation omitted). *See also Sweet v. Pfizer*, 232 F.R.D. 360, 366 (C.D. Cal. 2005) ("where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied") (citation, quotation omitted); *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 608 (N.D. Cal. 2004) (same).

**B.    The General Application of the SEI Policies to Plaintiffs and the Other Members of the Classes Establish Commonality, Typicality, and Class Cohesion**

The commonality and the typicality elements of Rule 23(a), as well as the common policy requirement of Rule 23(b)(2), are satisfied by the generally applicability of SEI's marketing practices generally applied to each Class member and the Class representatives. SEI prepared and distributed marketing specifications in association with each XBR1 Television model, and these marketing specifications all contain a common representation that the XBR1 Televisions were capable of 1080p resolution and uniformly conceal the material fact that the XBR1 Televisions could not receive 1080p signals.

"Although common issues must predominate for class certification under Rule 23(b) (3), no such requirement exists under 23(b)(2)." *Walters*, 145 F.3d at 1047. Under Rule 23(b)

Plaintiffs' Memorandum of Points and Authorities  16                                    No. 07cv2126 -JM(NLS)
in support of their Motion for Preliminary
Injunction and Conditional Class Certification

(2), it is sufficient that there is "a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Id*. A class can be certified under Rule 23(b)(2) where it is "composed of those who have not yet been injured by the allegedly defective policies, but that are or will in the future be exposed to a risk of harm as a result of the policies," provided the class definition provides "definite boundar[ies]" between class members and non-class members. *Caroline C. v. Johnson*, 174 F.R.D. 452, 459-61 (D. Neb. 1996). *See also Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998) (class claims under Rule 23(b)(2) "must be cohesive," cited by *Sweet*, 232 F.R.D. at 374 ("a class under Rule 23(b)(2) must not be overrun with individual issues")).

Commonality exists where there are "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). *See also Blackie*, 524 F.2d at 904 (commonality only requires "a common issue of law or fact"); *O'Connor v. Boeing North Am., Inc.*, 180 F.R.D. 359, 370 (C.D. Cal. 1997) (sufficient commonality for class certification where relief "turn[s] on questions of law applicable in the same manner to each member of the class"). This does not require class members to be identical and interchangeable: it tolerates "divergent factual predicates" where there are "shared legal issues," as well as "a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

Typicality and commonality share many "underlying issue[s]." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001); *Smith v. Univ. of Wa. Law Sch.*, 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998) ("Typicality turns on the defendant's actions toward the plaintiff class, not particularized defenses against individual class members."). Under Rule 23(a)(3)'s "permissive standards," Plaintiffs are typical of their respective Classes because their claims are "reasonably co-extensive with those of absent class members; [the claims] need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Rule 23(a)(3) only requires "that the unnamed class members have injuries similar to those of the named plaintiffs and that the

Plaintiffs' Memorandum of Points and Authorities  17
in support of their Motion for Preliminary
Injunction and Conditional Class Certification                                    No. 07cv2126 -JM(NLS)

1  injuries result from the same, injurious course of conduct." *Armstrong*, 275 F.3d at 869.[4]

2       Certification of the Class is appropriate because each member of the Class (and each

3  Plaintiff) was potentially affected SEI's marketing practices that the Motion seeks to address.

4
5       **C.    Class Representatives And Their Counsel Are Adequate to Represent the Classes**

6       Lastly, Rule 23(a)(4) requires that Plaintiffs and their counsel fairly and adequately

7  protect the class's interests. The adequacy test has two elements: (1) are there conflicts

8  between the Class representatives or their counsel and the other Class members, and (2) will

9  the Class representatives and their counsel vigorously prosecute the class action? *See Hanlon*,

10  150 F.3d at 1020. *See also Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003) (adequacy

11  "depends on the qualifications of counsel for the representatives, an absence of antagonism, a

12  sharing of interests between representatives and absentees, and the unlikelihood that the suit is

13  collusive"). Plaintiffs' counsel are well qualified and highly experienced in litigating

14  consumer fraud actions. (Preston Decl. ¶ 9.) Counsel will advance the costs of litigation and

15  will represent the Classes on a contingent fee basis, and will provide representation to the

16  class adequate pursuant to Rule 23(a)(4). Likewise, no potential conflicts exist here: Plaintiffs

17  share the precise same claims with their respective Classes, and have an acute interest in the

18  issuance of the preliminary injunction. "[C]ourts have generally declined to consider

19  conflicts . . . sufficient to defeat class action status at the outset unless the conflict is apparent,

20  imminent, and on an issue at the very heart of the suit." *Blackie*, 524 F.2d at 909. The burden

21  is on the party opposing certification to show that the named plaintiff will be an inadequate

22  representative. *In re Data Access Systems Sec. Litig.*, 103 F.R.D. 130, 140 (D.N.J. 1984).

23
─────────────

24  [4] Indeed, typicality under Rule 23(a)(3) lends class representatives enough flexibility to even borrow absent class members' standing. *See Gratz v. Bollinger*, 539 U.S. 244, 262-68 (2003)

25  (class representative denied undergraduate admission as freshman could represent class of applicants denied undergraduate admission as transfers; use of race in transfer admissions

26  [did] not "implicate a significantly different set of concerns" than use of race in freshman admissions); *Hicks v. Morgan Stanley & Co.*, No. 01-10071, 2003 U.S. Dist. LEXIS 11972, at

27  *23 (S.D.N.Y. July 16, 2003) (analyzing *Gratz* and concluding that typicality requirement in Rule 23(a)(3) sufficiently flexible that class representation with section 12 Securities Act

28  claim could represent class of section 11 claimants, citing 1 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 2:9 (4th ed. 2002))); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 283 (S.D.N.Y. 2003) (similar).

Plaintiffs' Memorandum of Points and Authorities  18
in support of their Motion for Preliminary
Injunction and Conditional Class Certification
     No. 07cv2126 -JM(NLS)

1    **IV.    Conclusion**

2        Plaintiffs are entitled to the preliminary injunction sought in the attached Motion to

3    protect their rights under California law. Further the injunction is required to ameliorate the

4    harm to consumer confidence in commercial representations caused by SEI's deceptive

5    marketing practices. The benefits of the relief sought will greatly outweigh any potential

6    harms to SEI, so the Court should grant the relief requested.

7    Date:            November 15, 2007

8                                                By: s/Alan Himmelfarb
                                                 Attorneys for Jason Demas and John
9                                                Renninger

10                                               Alan Himmelfarb (Cal. Bar. No. 90480)
                                                 KAMBEREDELSON LLC
11                                               2757 Leonis Blvd.
                                                 Los Angeles, CA 90058
12                                               (323) 585-8696
                                                 ahimmelfarb@kamberedelson.com

13                                               Jay Edelson
                                                 Ethan Preston
14                                               KAMBEREDELSON LLC
                                                 53 West Jackson Ave., Suite 1530
15                                               Chicago, IL 60604
                                                 312-589-6370
16                                               jedelson@kamberedelson.com
                                                 epreston@kamberedelson.com

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Memorandum of Points and Authorities  19                    No. 07cv2126 -JM(NLS)
in support of their Motion for Preliminary
Injunction and Conditional Class Certification