Alan Himmelfarb
KAMBEREDELSON LLC
2757 Leonis Blvd.
Los Angeles, CA 90058
(323) 585-8696
consumerlaw1@earthlink.net

Jay Edelson
Ethan Preston
KAMBEREDELSON LLC
53 West Jackson Ave., Suite 1530
Chicago, IL 60604
312-589-6370
jedelson@kamberedelson.com
epreston@kamberedelson.com

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JASON DEMAS and JOHN RENNINGER, on their own behalves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SONY ELECTRONICS, INC., a Delaware corporation,<br><br>Defendant. | No. 07cv2126 -JM(NLS)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

Plaintiffs Jason Demas and John Renninger, by their attorneys, make this First Amended Class Action Complaint against Defendant, Sony Electronics, Inc., on their own behalves and on behalf of all others similarly situated. Plaintiffs' allegations are based on information and belief, except as to their own actions, which are based on knowledge. Plaintiffs' information and belief are based on the investigation of his counsel, and facts that are a matter of public record.

**Nature of the Claim**

1. Defendant Sony Electronics, Inc. ("SEI") markets and distributes electronics and recording media products for consumers, including, *inter alia*, the following models of high-definition television sets: KDS R50XBR1 and KDS R60XBR1 (the

Plaintiffs' Memorandum of Points and Authorities      No. 07cv2126 -JM(NLS)
in support of their Motion for Preliminary
Injunction and Conditional Class Certification

"Televisions"). SEI is the largest component of Sony Corporation of America, the U.S. holding company for Sony's U.S. based electronics and entertainment businesses.

2. Defendant SEI markets the Televisions as having a "1080p" resolution, currently the highest resolution available. The "1080" portion of the 1080p designation indicates the television contains 1080 vertical lines of pixels across the display. The "p" portion of the 1080p designation indicates a progressive scan format, meaning that the television "fills in" *every* line of pixels for every frame shown on the television's display.

3. By contrast, a television which uses an interlaced scan format (which may be designated with an "i") fills in *every other* line of pixels for every frame shown on the television's display. On most contemporary displays, however, the image is deinterlaced – the television contains microprocessors that use a variety of techniques to fill in the missing lines of pixels by extrapolating from the existing pixels in the signal – before it is shown on the display. Deinterlacing does not result in the same image a progressive scan would provide, and creates various defects in the image which are noticeable to consumers.

4. In short, a television that can display progressive scan format can provide a smoother, cleaner image than an interlaced scan format. Thus, a television's progressive scan capability is a material fact to television purchasers. Indeed, because it claimed the Televisions were capable of 1080p resolution, SEI was able to charge its retailer customers a premium for this series of televisions. In turn, these retailers passed this premium on to their customers – including the Plaintiffs.

5. The Televisions, for all practical purposes, did not have 1080p resolution. Displaying media content on a progressive scan format involves roughly double the data and "bandwidth" that displaying the same media content on a interlaced scan format would require. This data must be transmitted from a 1080p signal source (like a next-generation (HD DVD or Blu-Ray) DVD player or a video game console (Sony PlayStation 3)) to the display through connector cables.

6. Not all connections are capable of carrying sufficient bandwidth to allow a television

to receive a full 1080p resolution signal. None of the connections on the Televisions were capable of receiving 1080p resolution signals, but were only capable of receiving (at most) 1080i resolution signals. There was no way for any of the Televisions to display a 1080p signal from a 1080p source, because there was no way for the Televisions to receive any 1080p signals. Rather, the Televisions display a deinterlaced 1080i signal – because the Televisions cannot receive every pixel for every frame directly from the 1080p signal source, the Televisions must fill in the remaining pixels through the use of deinterlacing techniques.

7. A representation that a television is able to *display* a 1080p resolution is meaningless and misleading without the ability to *receive* a 1080p resolution. No contemporary television actually displays an interlaced image; the last televisions to actually display an interlaced image were cathode ray tubes. Certainly, no consumer of high-definition televisions expects any high-definition television to display an interlaced scan resolution. Rather, consumers of high-definition televisions would expect televisions marketed as having a 1080i displays or a 1080i resolution to display a deinterlaced 1080i signal, where microprocessors in the television produce the pixels missing from the 1080i signal so that images displayed fill every pixel on every frame.

8. SEI's representations that its Televisions had a 1080p display reasonably created the consumer expectation that the Televisions would also be able to receive 1080p resolution signals. Purchasers of the Televisions, including Plaintiffs, were not informed that, although the Televisions were marketed as having 1080p resolution, they were not be able to receive 1080p signals.

**Parties**

9. Plaintiff John Demas is a resident of Illinois. He purchased a KDS R60XBR1 model television from Grant's Appliances in Illinois in or about July 2006. He did not learn that his KDS R60XBR1 model television could not show 1080p resolutions until he purchased a PlayStation 3 and discovered that his television did not support the 1080p resolution and only supported the 1080i resolution. Demas initially sought relief from

his retailer, and then called Defendant. Defendant ultimately refused to do anything for Demas. Demas has been trying to resolve his situation for months.

10. Plaintiff John Renninger is a resident of Illinois. He purchased a KDS R50XBR1 model television from Dynaco Company in Hauppauge, New York over the Internet on December 31, 2005. He discovered his Television did not have a connection capable of receiving a 1080p signal after Jason Demas told him Demas's television could not receive a 1080p signal. Renninger had his son attempt to play his PlayStation 3 on the 1080p setting – and found the Television would not accept a 1080p signal or operate on a 1080p signal.

11. Defendant Sony Electronics, Inc. is a Delaware Corporation with its corporate headquarters located at 1645 West Bernardo Street, San Diego, California 92127. SEI is the largest component of Sony Corporation of America, the U.S. holding company for Sony Kabushiki Kaisha's U.S.-based electronics and entertainment businesses.

**Jurisdiction and Venue**

12. Defendant is a Delaware corporation headquartered in California and can only be a citizen in the states of California and Delaware. Plaintiffs asserts claims of behalf of a proposed class whose members are scattered throughout the fifty states (including the 48 states besides California and Delaware) and the jurisdictions within the United States: there is minimal diversity of citizenship between proposed class members and the Defendant. The aggregate of these claims exceed the sum or value of $5,000,000. This Court also has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d).

13. This Court has personal jurisdiction over the Defendant under Cal. Code Civ. Proc. § 410.10 because Defendant maintains its corporate headquarters in, and the majority of the acts alleged herein were committed in, California and, specifically, the Southern District of California.

14. Venue is also proper before this Court under 28 U.S.C. § 1391(b)(1), (2).

**Facts**

15. SEI marketed each model of the Televisions with a single, uniform set of marketing specifications that were common to each Television model. The marketing releases for KDS-R50XBR1 and the KDS-R60XBR1 are attached as Exhibits 1 and 2 to this Complaint.

16. According to SEI's marketing specifications for the KDS-R50XBR1 and the KDS-R60XBR1 model televisions, these televisions had a "Native Resolution: 1080p" and contained "SXRD Panels" which

> [met] and exceed[ed] the demands of a High Definition image at its full 1080 line resolution. Digitally transmitted High Definition signals can contain over 2 million individual detail points that need to be displayed accurately and rapidly. SXRD displays those 2 million detail points per SXRD panel accurately since the 3 SXRD panels actually contain enough pixels to fully display a 1080 line picture without interlacing it.

(*Id*. at 1.)

17. SEI's marketing agents and/or sales representatives provided these marketing specifications to SEI's retailer customers when offering the KDS-R50XBR1 and the KDS-R60XBR1 model televisions for sale to those customers.

18. On information and belief, SEI's marketing agents and/or sales representatives also made a uniform sales presentations to SEI's customers that the KDS-R50XBR1 and the KDS-R60XBR1 model televisions were capable of 1080p resolution.

19. SEI's customers (including Grant's Appliances) believed and relied on SEI's representations that the KDS XBR1 series of televisions were capable of 1080p resolution. These retail customers paid a premium for the KDS XBR1 series of televisions in reliance on SEI's representations.

20. Demas purchased his KDS R60XBR1 model television from Grant's Appliances on or about July 2006. He made this purchase on shortly after receiving representations from the sales people at the Grant's Appliances that his televisions were capable of the highest resolution presently available on the market – specifically, 1080p resolution. Demas paid a premium to Grant's Appliances for his Television in reliance on the representation that his television was capable of displaying 1080p resolutions, which

representation was proximately and directly caused by SEI's marketing specifications and sales presentations to Grant's Appliances. Demas was not told that his KDS R60XBR1 model television was not capable of receiving a 1080p signal.

21. Renninger purchased his KDS R50XBR1 television on December 31, 2005. Shortly before making this purchase, Renninger reviewed SEI's marketing information on the KDS R50XBR1 model television provided by Dynaco, which represented that the KDS R50XBR1 television had a 1080p resolution. Renninger paid a premium to Dynaco for his Television in reliance on the representation that his television was capable of displaying 1080p resolutions, which representation was proximately and directly caused by SEI's marketing specifications and sales presentations to Dynaco. Renninger was not told that his KDS R50XBR1 model television was not capable of receiving a 1080p signal.

## Class Certification Allegations

22. Plaintiffs brings this action on behalf of themselves and all other similarly situated people as members of a Class as defined as follows: All persons or entities in the United States who purchased one or more of the televisions which SEI marketed or represented as having a 1080p resolution, but which televisions were not capable of receiving a 1080p signal.

23. **Class Numerosity:** Plaintiffs do not know the exact size of the Class, but such information is in SEI's exclusive control and readily ascertainable from SEI's records. Based on SEI's distribution of these television sets, Plaintiffs believe the Class members number in the thousands. Therefore, individual joinder of all members of the Class is likely to be impracticable. Class members may be notified of the pendency of this action by email, mail, and/or supplemented (if deemed necessary or appropriate by the Court) by published notice.

24. **Class Commonality:** Common questions of fact and law exist as to all Class members and predominate over the questions affecting only individual Class members. These common questions include:

    (a)    Whether Defendant failed to disclose, inadequately disclosed, and/or concealed at the point of sale that the Televisions did not contain a 1080p input connection;

    (b)    Whether the 1080i input connection produces a significantly lower resolution that 1080p;

    (c)    Whether the lack of 1080p input connection renders the Televisions less valuable; and

    (d)    Whether Plaintiffs and the Class are entitled to relief, and the nature of such relief.

25. **Class Typicality:** Plaintiffs' claims are typical of the claims of other Class members; they purchased a Television under the mistaken belief that it would receive a 1080p resolution. The wrongful conduct of Defendant threatens the Plaintiffs and other Class members with the same injury and/or damages arising out of and based upon the same transactions, made uniformly to the Plaintiffs and the public.

26. **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the other Class members, and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.

27. **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual Class member will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendant. It would be virtually impossible for the Class members individually to obtain effective relief from the misconduct of Defendant. Even if members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of

single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

28. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. The policies of the Defendant challenged herein apply and affect the Class uniformly, and Plaintiffs' challenge of these policies hinges on Defendant's conduct, not on facts or law applicable only to Plaintiff.

**Count I: Violation of the California Consumer Legal Remedies Act**

29. Plaintiffs and every other member of the Class are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

30. The Televisions that are the subject of this litigation are "goods" within the meaning of Cal. Civ. Code § 1761(a).

31. SEI has violated the California Consumer Legal Remedies Act ("CLRA") in at least the following respects:

    (a) In violation of Cal. Civ. Code § 1770(a)(5), SEI represented that the Televisions have characteristics and benefits they did not have;

    (b) In violation of Cal. Civ. Code § 1770(a)(7), SEI represented that the Televisions were of a particular standard, quality or grade that they were not.

32. SEI concealed material facts regarding the Televisions from Plaintiffs and other Class members, including that it did not contain a 1080p input connection. This conduct caused Plaintiffs and other Class members to rely on representations their televisions were capable of 1080p resolution, which was not true because the Televisions did not contain a 1080p input connection.

33. However, Plaintiffs expressly disclaim any allegation that Defendants made *intentional* misrepresentations with respect to the marketing of the Televisions.

34. The Televisions' capability to receive 1080p resolution signals is a fact that is relied up by consumers in making purchasing decisions and is fundamental to the decisions to purchase specific models of televisions. SEI knew that the Television could not accept a 1080p signal and understood that the Television's ability to accept a 1080p signal the kind of information that a buyer would be expected to rely on in deciding whether to purchase the Television. SEI nonetheless marketed the Television as having a 1080p display without disclosing that the Television could not receive a 1080p signal.

35. SEI's customers paid a premium for Televisions in reliance on SEI's misleading representations that such televisions were capable of 1080p resolution. In turn, SEI's customers relayed those same misrepresentations to Plaintiffs and other Class members, who relied on those misrepresentations to their detriment (which reliance was proximately and directly caused by SEI's marketing releases and sales presentations).

36. SEI's failure to disclose the lack of 1080p input connection is an omission and concealment of material fact that constitutes unfair, deceptive and misleading business practices in violation of Cal. Civ. Code § 1770(a).

37. SEI's deceptive acts and omissions occurred in the course of selling a consumer product.

38. Had Defendant disclosed this material information to Plaintiffs and the other Class members, they would not have purchased these televisions or would not have paid a premium to do so. Defendant's violation of Cal. Civ. Code § 1770(a) has directly and proximately harmed Plaintiffs and other Class members.

39. As a direct and proximate result of SEI's CLRA violations, Plaintiffs and the other Class members have suffered irreparable harm. Plaintiffs, on their own behalves and on behalf of the Class, seek injunctive relief, including the injunctive relief set forth in their Motion for Preliminary Injunction.

40. As a direct and proximate result of SEI's CLRA violations, Plaintiffs and the other

Class members have suffered damages. Plaintiffs, on their own behalves and on behalf of the Class, seek damages in an amount to be proved at trial to the extent such claim is consistent with Cal. Civ. Code § 1782(a).

### Count II: Violation of the California Unfair Competition Law

41. Plaintiffs incorporate by reference and realleges all paragraphs previously alleged herein.

42. Defendant's business acts and practices related to the manufacture, use and distribution of the Televisions are unlawful because they violate the CLRA, as well as other laws. The aforementioned business acts and practices constitute unfair competition under Cal. Bus. & Prof. Code § 17200.

43. Defendant's acts are fraudulent and unfair, because they are likely to deceive the public or conceal the truth from the public regarding:

    (a)    the lack of a 1080p input connection;

    (b)    the difference in resolution between the advertised 1080p connection and the provided 1080i connection.

44. SEI's representations and/or omissions of material fact were untrue or misleading, and were made with the intent, "indirectly or directly" to sell the Televisions. SEI knew or should have known through the exercise of reasonable care that the representations and/or omissions were misleading. SEI thereby violated California's false advertising statute, Cal. Bus. & Prof. Code § 17500, and its actions constitute unfair competition under Cal. Bus. & Prof. Code § 17200.

45. However, Plaintiffs again expressly disclaim any allegation that Defendants made *intentional* misrepresentations with respect to the marketing of the Televisions.

46. Defendant's customers paid a premium for the Televisions in reliance on Defendant's misrepresentations that such televisions were capable of 1080p resolution. In turn, Defendant's customers relayed those same misrepresentations to Plaintiffs and other Class members, who relied on those misrepresentations to their detriment (which reliance was proximately and directly caused by SEI's marketing releases and sales

presentations).

47. Plaintiffs and the other Class members have sustained injury in fact and have lost money and property as a result of defendant's unfair competition.

48. Plaintiffs and other Class members state a claim under Cal. Bus. Prof. Code § 17203, and seek equitable relief (including, if necessary, the appointment of a receiver) to prevent further unfair competition and restitution in the amount of all the funds acquired by such unfair competition, including the equitable relief requested in the Motion for Preliminary Injunction.

WHEREFORE, Plaintiffs pray that the Court enter judgment and orders in his favor and against Defendant as follows:

(a) An order certifying the Class, directing that this case proceed as a class action, and appointing Plaintiffs and their counsel to represent the Class;

(b) Judgment in favor of Plaintiffs and the other Class members for equitable relief against Defendant, including an order enjoining Defendant from the further marketing of televisions as having a 1080p display without disclosing, where accurate, that the televisions do not have 1080p input connections;

(c) An order granting reasonable attorneys' fees and costs, as well as pre- and post-judgment interest at the maximum legal rate; and

(d) Such other and further relief as this Court may deem appropriate.

**JURY TRIAL DEMAND**

The Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: December 10, 2007

By: s/Alan Himmelfarb

Alan Himmelfarb
KAMBEREDELSON LLC
2757 Leonis Blvd.
Los Angeles, CA 90058
(323) 585-8696
consumerlaw1@earthlink.net

Jay Edelson
KAMBEREDELSON LLC
53 West Jackson Ave., Suite 1530
Chicago, IL 60604

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

312-589-6370
jedelson@kamberedelson.com
epreston@kamberedelson.com

**CERTIFICATE OF SERVICE**

Pursuant to 28 U.S.C.§ 1746, I hereby certify that I served the foregoing First Amended Class Action Complaint upon the parties listed below by causing the foregoing document to be transmitted to the Electronic Filing System in the manner prescribed by the Court's Administrative Policies and Procedures Manual:

Nancy Sher Cohen
Ronald A Valenzuela
Heller Ehrman LLP
333 South Hope Street, 39th Floor
Los Angeles, CA 90017

*Attorneys for Sony Electronics, Inc.*

Date:         December 10, 2007

                                                  By: s/Alan Himmelfarb
                                                       ALAN HIMMELFARB

# Exhibit 1

# KDS-R50XBR1
### Grand WEGA™ SXRD™ Rear Projection Television



## Key Features

- SXRD™ Technology
- WEGA Engine™ HD System
- Cinema Black Pro
- ATSC Integrated Tuner with CableCARD™ Slot
- HDMI™ (High Definition Multimedia Interface)
- PC Input (D-Sub 15pin)

## Key Technologies

**SXRD™ Panels** SXRD technology is a new display technology developed by the legendary television engineers at Sony® to meet and exceed the demands of a High Definition image at its full 1080 line resolution. Digitally transmitted High Definition signals can contain over 2 million individual detail points that need to be displayed accurately and rapidly. SXRD displays those 2 million detail points per SXRD panel accurately since the 3 SXRD panels actually contain enough pixels to fully display a 1080 line picture without interlacing it.

SXRD has the speed to create a smooth, film like image. The SXRD panels have a blistering 2.5ms response time (total rise and fall time), which exceeds the demands of even the most rapidly moving High Definition images. And SXRD creates highly accurate, natural colors because the 3-panel design displays all the colors, all the time.

**Cinema Black Pro** Cinema Black Pro is an exclusive Sony function designed to improve contrast expression especially in darker scenes. The Cinema Black Pro function is enabled by using either one or both of two features - Iris Control and Advanced Iris. The Iris Control function sets the maximum size of the iris opening and sets the overall level of brightness. There are six settings that allow the user to adjust the iris opening to best match the room lighting conditions.

The Advanced Iris function is a dynamic adjustment that automatically opens and closes the iris according to the gamma level of the picture on the screen. There are four different adjustments. The "High" setting is ideal for movies and music video content. And the "Off" setting works great for sports and news content.

**WEGA Engine™ HD** Because of the special demands HDTV places on signal quality a new generation of Sony's exclusive WEGA Engine™ advanced picture quality system has evolved into WEGA Engine™ HD. Two innovative digital imaging processes have been added to improve overall picture quality. A High Contrast Image processor dynamically detects the histogram of each frame and instantly applies the ideal contrast level for crisper images. And the Natural High Density Picture image processor reduces noise elements by intelligently separating the noise from the video signal for a purer more detailed picture. Enjoy a stunning display of realistic images, amazing detail and sharpness, reduced noise and enhanced clarity with improved depth and contrast.







*like.no.other*™

**SONY**

GRAND FAMILY WEGA

# KDS-R50XBR1
Grand WEGA™ SXRD™ Rear Projection Television

## Features

### General
Auto SAP: Yes
Channel Fix: Yes
ID1 Detection: Yes
Video Label: Yes

### Video
Tuner: 8 VSB, ATSC, NTSC, Clear QAM, CableCARD™ QAM
Video Processing: Yes
Auto White Balance: Yes
Color Temperature: Cool, Neutral, Warm
Color Correction: High, Low, Off
Noise Reduction: Yes
Black Corrector: High, Medium, Low, Off
Clear White: On, Off
Gamma Compensation: High, Medium, Low, Off
CineMotion® Reverse 3:2 Pulldown Technology: Yes
Digital Texture Enhancer: High, Medium, Low, Off
Direct Digital II Circuitry: Yes
Advanced Iris: Yes
Slide Show Mode: Slide Show transitions
Display Mode for PC Input: Video, Text
Comb Filter: 3D Digital Comb Filter
DRC® MultiFunction Circuitry: Yes (DRC MF V2)
DRC® Mode: Mode 1, Mode 2, CineMotion® Technology
DRC® Palette Presets: Custom 1, Custom 2, Custom 3
Direct Mode: On, Off
Game Mode: On/Off
Game Picture: Yes
Auto Adjustment (PC): Yes
Phase (PC Only): Yes
Pitch (PC Only): Yes
Advanced Video Menu: Yes
Picture Modes: Vivid, Standard, Pro
Color System: ATSC, NTSC
BN Smoother: Yes
Wide Mode: Yes
Display Technology: SXRD™ Technology

### Audio
Tone Control(s): Treble, Bass
Sound Mode: Dynamic, Clear Voice, Natural
MTS Stereo Decoder: Yes
Digital Amplifier: Yes (S-Master® Digital Amplifier)
Audio Mute: Yes
Speaker On/Off: Yes
Simulated Surround: Yes
SRS® TruSurround® Audio Effect: Yes
Dolby® Digital: Yes

### Convenience
Channel Label: Yes
Channel Skip/Add: Yes
Channel Jump: Yes
Favorite Channel: Yes
Speed Surf™ Channel Selection: Yes
Program Guide Access: Yes
Auto Channel Programming: Yes
Menu Color: Yes
Multiple Language Display: English, Español, Français
Parental Control (V-Chip): Yes
Info Banner: Yes
Programmable Timer: 2 Event
Sleep Timer: 15, 30, 45, 60, 90, Off
Timer Events: Timer 1, Timer 2
Caption Vision: On, Off, Program
Clock: Yes
Power Save Mode: Standard, Reduced, Picture Off
Built-In AC Adaptor: Yes
Twin-View™ Technology: Yes
Picture Freeze: Yes

## Specifications

### General
Aspect Ratio: 16:9
Screen Size: 50"[1]

### Video
Native Resolution: 1080p
Horizontal Scan (KHz) for PC: 15 different frequencies
Display Resolution: 1920 x 1080
Overscan: Normal, +1, +2
Viewing Angle: Right/Left: 130°, Up/Down: 60°
Display Response Time: 2.5ms
Vertical Size: Yes
Vertical Center: +63 to -64
Horizontal Center: +63 to -64
Vertical Frequency (Hz): 6 different frequencies

### Audio
Speaker Type: Round Cone
Speakers (Total): 4
Full Range Speaker Size: 3 1/4"
Audio Power Output: 30W Total (15W x 2)

### Inputs and Outputs
Analog Audio Input(s): 6 (1 Front/5 Rear)
Audio Out (Variable/Fixed): 1 (Rear)
CableCARD™ Slot: 1 (Rear)
Component Video (Y/Pb/Pr) Input(s): 2 (Rear)
Composite Video Input(s): 3 (1 Front/2 Rear)
Control-S Input(s): 1 (Rear)
Control-S Output(s): 1 (Rear)
i.LINK® Connection: 3 (1 Front/2 Rear)
Memory Stick® Media Slot: 1 (Front) - Memory Stick Duo™, Memory Stick PRO Duo™, Memory Stick PRO™ Media Compatibility
RF Connection Input(s): 2 (Rear)
S-Video Input(s): 3 (1 Front/2 Rear)
PC Audio Input(s): 1 (Rear)
PC Video Input(s): 1 (Rear)
HDMI™ Connection(s): 2 (Rear) - 1 rear input included L/R audio inputs
Optical Audio Digital Output(s): 1 (Rear) Dolby® Digital

### Power
Internal Power Supply: Yes
Power Consumption (in Operation): 240W
Power Consumption (in Standby): 0.5W
Power Requirements: AC 120V, 60Hz
Power Management: Yes
Power Consumption (CableCARD™ Function in Standby): Less than 30W (Also applies to i.LINK port.)

### Regulation and Standard Compliance
Energy Star® Compliant: Yes

### Service and Warranty Information
Limited Warranty: 1 Year Parts / 1 Year Labor

### Dimensions
Weight: 94lbs 13oz (43Kg)
Measurements: 57 1/4" x 34" x 18 7/8" (1453 x 863 x 478 mm)

### Supplied Accessories
Remote Control (RM-Y914)
Operating Instructions
Quick Start Guide
Batteries (AAA x2)
Warranty
Product Registration Card

### Optional Accessories
SU-GW12 (AV Stand)
XL-5100 (120W Replacement Lamp)

UPC Code: 027242681101

Confidential Sony Information. For Internal Use Only.
1. Screen Size measured diagonally
2. For additional viewing angle information please consult the Owner's Manual.

© 2005 Sony Electronics Inc. All rights reserved.
Sony, Qualia, Grand WEGA, S-Master, Steady Sound, WEGA Engine, Speed Surf, Memory Stick, SXRD, i.LINK, CineMotion and DRC are trademarks of Sony. CableCARD is a trademark of Cable Television Laboratories, Inc. SRS and the SRS symbol, and TruSurround are trademarks of SRS Labs, Inc. This TV incorporates High-Definition Multimedia Interface (HDMI™) technology. HDMI, the HDMI logo and High-Definition Multimedia Interface are trademarks or registered trademarks of HDMI Licensing LLC. All other trademarks are property of their respective owners.
Features and specifications are subject to change without notice. Non-metric weights and measures are approximate.

Please visit the Dealer Network for current information at www.sony.com/dn

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | # Exhibit 2 |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

**SONY**® WEGA

## KDS-R60XBR1
Grand WEGA™ SXRD™ Rear Projection Television™

### Key Features

- SXRD™ Technology
- WEGA Engine™ HD System
- Cinema Black Pro
- ATSC Integrated Tuner with CableCARD™ Slot
- HDMI™ (High Definition Multimedia Interface)
- PC Input (D-Sub 15pin)



### Key Technologies

**SXRD™ Panels** SXRD technology is a new display technology developed by the legendary television engineers at Sony to meet and exceed the demands of a High Definition image at its full 1080 line resolution. Digitally transmitted High Definition signals can contain over 2 million individual detail points that need to be displayed accurately and rapidly. SXRD displays those 2 million detail points per SXRD panel accurately since the 3 SXRD panels actually contain enough pixels to fully display a 1080 line picture without interlacing it.

SXRD has the speed to create a smooth, film like image. The SXRD panels have a blistering 2.5ms response time (total rise and fall time), which exceeds the demands of even the most rapidly moving High Definition images. And SXRD creates highly accurate, natural colors because the 3-panel design displays all the colors, all the time.

**Cinema Black Pro** Cinema Black Pro is an exclusive Sony function designed to improve contrast expression especially in darker scenes. The Cinema Black Pro function is enabled by using either one or both of two features - Iris Control and Advanced Iris. The Iris Control function sets the maximum size of the iris opening and sets the overall level of brightness. There are six settings that allow the user to adjust the iris opening to best match the room lighting conditions.

The Advanced Iris function is a dynamic adjustment that automatically opens and closes the iris according to the gamma level of the picture on the screen. There are four different adjustments. The "High" setting is ideal for movies and music video content. And the "Off" setting works great for sports and news content.

**WEGA Engine™ HD** Because of the special demands HDTV places on signal quality a new generation of Sony's exclusive WEGA Engine™ advanced picture quality system has evolved into WEGA Engine™ HD. Two innovative digital imaging processes have been added to improve overall picture quality. A High Contrast Image processor dynamically detects the histogram of each frame and instantly applies the ideal contrast level for crisper images. And the Natural High Density Picture image processor reduces noise elements by intelligently separating the noise from the video signal for a purer more detailed picture. Enjoy a stunning display of realistic images, amazing detail and sharpness, reduced noise and enhanced clarity with improved depth and contrast.








like.no.other™

# SONY

## WEGA

# KDS-R60XBR1
### Grand WEGA™ SXRD™ Rear Projection Television

## Features

### General
Auto SAP: Yes
Channel Fix: Yes
ID1 Detection: Yes
Video Label: Yes

### Video
Tuner: 8 VSB, ATSC, NTSC, Clear QAM, CableCARD™ QAM
Video Processing: Yes
Auto White Balance: Yes
Color Temperature: Cool, Neutral, Warm
Color Correction: High, Low, Off
Noise Reduction: Yes
Black Corrector: High, Medium, Low, Off
Clear White: On, Off
Gamma Compensation: High, Medium, Low, Off
CineMotion® Reverse 3:2 Pulldown Technology: Yes
Digital Texture Enhancer: High, Medium, Low, Off
Direct Digital II Circuitry: Yes
Advanced Iris: Yes
Slide Show Mode: Slide Show transitions
Display Mode for PC Input: Video, Text
Comb Filter: 3D Digital Comb Filter
DRC® MultiFunction Circuitry: Yes (DRC MF V1)
DRC® Mode: Mode 1, Mode 2, CineMotion® Technology
DRC® Palette Presets: Custom 1, Custom 2, Custom 3
Direct Mode: On, Off
Game Mode: On/Off
Game Picture: Yes
Auto Adjustment (PC): Yes
Phase (PC Only): Yes
Pitch (PC Only): Yes
Advanced Video Menu: Yes
Picture Modes: Vivid, Standard, Pro
Color System: ATSC, NTSC
BN Smoother: Yes
Wide Mode: Yes
Display Technology: SXRD™ Technology

### Audio
Tone Control(s): Treble, Bass
Sound Mode: Dynamic, Clear Voice, Natural
MTS Stereo Decoder: Yes
Digital Amplifier: Yes (S-Master® Digital Amplifier)
Audio Mute: Yes
Speaker On/Off: Yes
Simulated Surround: Yes
SRS® TruSurround® Audio Effect: Yes
Dolby® Digital: Yes

### Convenience
Channel Label: Yes
Channel Skip/Add: Yes
Channel Jump: Yes
Favorite Channel: Yes
Speed Surf™ Channel Selection: Yes
Program Guide Access: Yes
Auto Channel Programming: Yes
Menu Color: Yes
Multiple Language Display: English, Español, Français
Parental Control (V-Chip): Yes
Info Banner: Yes
Programmable Timer: 2 Event
Sleep Timer: 15, 30, 45, 60, 90, Off
Timer Events: Timer 1, Timer 2
Caption Vision: On, Off, Program
Clock: Yes
Power Save Mode: Standard, Reduced, Picture Off
Built-In AC Adaptor: Yes
Twin-View™ Technology: Yes
Picture Freeze: Yes

## Specifications

### General
Aspect Ratio: 16:9
Screen Size: 60"[1]

### Video
Native Resolution: 1080p
Horizontal Scan (KHz) for PC: 15 different frequencies
Display Resolution: 1920 x 1080
Overscan: Normal, +1, +2
Viewing Angle: Right/Left: 130°, Up/Down: 60°
Display Response Time: 2.5ms
Vertical Size: Yes
Vertical Center: +10 to -10
Horizontal Center: +63 to -64
Vertical Frequency (Hz): 6 different frequencies

### Audio
Speaker Type: Round Cone
Speakers (Total): 4
Full Range Speaker Size: 3 1/4"
Audio Power Output: 30W Total (15W x 2)

### Inputs and Outputs
Analog Audio Input(s): 6 (1 Front/5 Rear)
Audio Out (Variable/Fixed): 1 (Rear)
CableCARD™ Slot: 1 (Rear)
Component Video (Y/Pb/Pr) Input(s): 2 (Rear)
Composite Video Input(s): 3 (1 Front/2 Rear)
Control-S Input(s): 1 (Rear)
Control-S Output(s): 1 (Rear)
i.LINK® Connection: 3 (1 Front/ 2 Rear)
Memory Stick® Media Slot: 1 (Front) - Memory Stick Duo™, Memory Stick PRO Duo™, Memory Stick PRO™ Media Compatibility
RF Connection Input(s): 2 (Rear)
S-Video Input(s): 3 (1 Front/2 Rear)
PC Audio Input(s): 1 (Rear)
PC Video Input(s): 1 (Rear)
Optical Audio Digital Output(s): 1 (Rear) Dolby® Digital

### Power
Internal Power Supply: Yes
Power Consumption (in Operation): 240W
Power Consumption (in Standby): Less then 0.5W
Power Requirements: AC 120V, 60Hz
Power Management: Yes
Power Consumption (CableCARD™ Function in Standby): Less than 30W (Also applies to i.LINK port).

### Regulation and Standard Compliance
Energy Star® Compliant: Yes

### Service and Warranty Information
Limited Warranty: 1 Year Parts / 1 Year Labor

### Dimensions
Weight: 112lbs 7oz (51Kg)
Measurements: 65 10/11 x 39 8/11 x 20 3/13" (1674 x 1009 x 514mm)

### Supplied Accessories
Remote Control (RM-Y914)
Operating Instructions
Quick Start Guide
Batteries (AAA x2)
Warranty
Product Registration Card

### Optional Accessories
SU-GW12 (AV Stand)
XL-5100 (120W Replacement Lamp)

UPC Code: 027242681118

Confidential Sony Information. For Internal Use Only.
1. Screen Size measured diagonally
2. For additional information on viewing angles please consult the Owner's Manual.

© 2005 Sony Electronics Inc. All rights reserved.
Sony, Qualia, Grand WEGA, S-Master, Steady Sound, WEGA GATE, WEGA Engine, Speed Surf, Memory Stick, SXRD, i.LINK, CineMotion and DRC are trademarks of Sony. CableCARD is a trademark of Cable Television Laboratories, Inc. SRS and the SRS symbol, and TruSurround are trademarks of SRS Labs, Inc. This TV incorporates High-Definition Multimedia Interface (HDMI™) technology. HDMI, the HDMI logo and High-Definition Multimedia Interface are trademarks or registered trademarks of HDMI Licensing LLC. All other trademarks are property of their respective owners. Features and specifications are subject to change without notice. Non-metric weights and measures are approximate.



Please visit the Dealer Network for current information at www.sony.com/dn

Sony Electronics Inc. • 16530 Via Esprillo Drive • San Diego, CA 92127 • 1-800-222-7669 • www.sony.com        Last Updated: 08/31/2006